IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 23, 2007

## STATE OF TENNESSEE v. CHRISTOPHER NATHANIEL RICHARDSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2005-I-401     Steve Dozier, Judge**

_____

**No. M2006-01060-CCA-R3-CD** - Filed March 15, 2007

_____

The Defendant, Christopher Nathaniel Richardson, pled guilty to one count of possession of a controlled substance with the intent to deliver, and he was sentenced as a Range II multiple offender to seven years of supervised probation, with the first year to be served on intensive probation. After two probation violation warrants were issued based upon two arrests and other violations, the trial court revoked the Defendant's probation and ordered him to serve his sentence in confinement. It is from this judgment that the Defendant now appeals, contending that, while the trial court was within its discretion to revoke his probation, his violation does not warrant the imposition of his entire sentence. Concluding there exists no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS H. WOODALL, JJ., joined.

Emma Rae Tennent (on appeal), Graham Prichard and Kyle F. Mothershead (at hearing), Nashville, Tennessee, for the appellant, Christopher Nathaniel Richardson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I.  Facts**

This case arises from the revocation of the Defendant's probation. The Defendant originally pled guilty to possession of a controlled substance with the intent to deliver. At the Defendant's guilty plea hearing, on April 14, 2005, the State told the court that, had the case gone to trial, the evidence would prove that "on March eighth, two-thousand-five, Metro Police executed a narcotics search warrant at the Defendant's residence . . . and during the execution recovered a bag of white rocks from his bedroom closet in a blue box. . . . [The] [s]ubstance was field-tested positive for

cocaine base." The Defendant agreed that the evidence would prove those facts, and he offered a plea of guilty to possession of a controlled substance for resale. The trial court imposed on the Defendant, a Range II offender, a sentence of seven years of probation, with the first year being intensive probation.

On August 1, 2005, a probation violation warrant was issued alleging that the Defendant had violated his probation by being arrested and charged with being in unlawful possession of a handgun during his curfew hours, by not reporting the arrest to his probation or parole officer, by not verifying employment, and not paying court costs. On August 26, 2005, the trial court sustained this probation violation warrant and took the issue of the Defendant's punishment under advisement.

On March 10, 2006, a second probation violation warrant was issued alleging that the Defendant was arrested for possession or casual exchange of a controlled substance and that the Defendant did not report this arrest to his probation officer. On March 29, 2006, at a hearing on the probation violation warrant, Bradley Nave testified that he is an officer with the Metro-Nashville Police Department. On March 4, 2006, he responded to a call to a residence at 12:30 a.m. where he found the Defendant holding a small baby. The Defendant stated that he was there to see his child. When Officer Nave looked around, he saw in the interior of a seat, six inches from the Defendant, a small plastic bag that appeared to contain marijuana. The officer asked the Defendant if the bag was his, and the Defendant said "no." The only other people at the residence were an infant child and the Defendant's ex-girlfriend, and the officer took the Defendant into custody. The officer said that a trial judge determined that possession was not proven beyond a reasonable doubt and dismissed the case. On cross-examination, the officer agreed that nothing was found on the Defendant's person and that the Defendant did not appear under the influence of marijuana.

The Defendant's probation officer, Peter Kambitsis, testified that as part of the Defendant's intensive probation he has a 6:00 p.m. curfew. Because the Defendant had provided proof from his employer that he works at night, this curfew was waived, but only for the Defendant to be at work. Kambitsis testified that the arrest for possession was not reported to him. On cross-examination, Kambitsis agreed that the Defendant had been reporting to him "religiously" and only missed reporting dates when he was incarcerated. The Defendant told Kambitsis about the arrest after Kambitsis asked him about it. Kambitsis agreed that the Defendant was previously on electronic monitoring and had no irregularities, including no positive drug screens, during that time. Further, Kambitsis agreed that as far as he knew the Defendant was still employed.

The trial court noted that the Defendant had tested positive in a drug screen on the day of the hearing and asked the Defendant's attorney if he was prepared to defend that allegation. The Defendant's attorney responded that he was prepared to respond to that allegation.

The Defendant called Nikylan Donato with the Public Defender's Office who testified that she represented the Defendant at his bench trial on the charge of simple possession. She said that Officer Nave testified at the trial that the Defendant was not on the lease of the apartment where the drugs were found, that he did not have any marijuana on his person, and that he did not seem to be

2

under the influence of marijuana. The officer also testified that, when he entered the apartment, the Defendant was standing up with his child in front of a chair and that behind the chair was a table on which the marijuana was found.

The Defendant testified that he was aware that he had tested positive for marijuana on the drug screen that he took the day of trial. He said that was because he had smoked marijuana while he was on probation but said that he had only done so once. The Defendant said that, since he had been on probation, he had been working as a janitor as much as seven days a week and taking care of his daughter. Further, he had taken six drug screens while on probation, and all of them came back clean.

With regard to his background, the Defendant testified that he began selling drugs at thirteen because both of his parents used drugs. He said that he had not sold drugs at all since he had been on probation and that he was trying to be a different man and a good father. The Defendant agreed that he made one mistake by smoking marijuana and asked to be placed back on electronic monitoring. The Defendant said that his daughter was with him everyday and that he took care of her.

Upon questioning by the trial court, the Defendant explained that the day that he was arrested for marijuana possession, his daughter was not with him because his ex-girlfriend had taken her after an argument. When he went to see his daughter at his ex-girlfriend's house, she called the police. The Defendant said that he was not supposed to go to his ex-girlfriend's house. The Defendant told the court that he was trying to be a productive citizen.

On cross-examination, the Defendant testified that he smoked marijuana since March 4, 2006, and he smoked it while incarcerated. The Defendant said that he smoked the marijuana with other inmates, but he did not know their names. The Defendant denied that he had a drug problem. About the night that he was arrested, the Defendant testified that his ex-girlfriend asked him to leave, and he told her he would leave when he had to go to work, which was at 1:00 a.m.

Based upon this evidence, the trial court sustained this warrant and took the issue of the Defendant's punishment under advisement. In its final order, the trial court found:

> The defendant has been on felony probation two (2) times according to his record with three (3) prior violations. As suggested above, the Court is of the opinion that after taking the opposing arguments and proof into consideration, the suitable resolution to the issue is to order the defendant's sentence to be placed into effect."

It is from that judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant concedes that the trial court did not abuse its discretion in finding

that he had violated a condition of his probation.  He, however, contends that his violation does not warrant the imposition of his entire seven year sentence in continuous confinement.  He asks this Court to reinstate his probation.

When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. Tenn. Code Ann. § 40-35-311(e) (2006).  Upon finding that the defendant has violated the conditions of probation, the trial court may revoke the probation and either: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years.  State v. Hunter, 1 S.W.3d 643, 644 (Tenn. 1999); see Tenn. Code Ann. § 40-35-310 (2006); Tenn. Code Ann. § 40-35-311(e) (2006); Tenn. Code Ann. § 40-35-308(c) (2006).  The defendant has the right to appeal the revocation of his probation and entry of his original sentence. Tenn. Code Ann. § 40-35-311(e).  Upon a finding of a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." Tenn. Code Ann. § 40-35-311(e); Hunter, 1 S.W.3d at 646 (holding that the trial court retains the discretionary authority to order the defendant to serve his or her original sentence in confinement).  Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension . . . ." Tenn. Code Ann. § 40-35-310. The trial judge retains the discretionary authority to order the defendant to serve the original sentence.  See State v. Duke, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995).

The decision to revoke probation is in the sound discretion of the trial judge.  State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).  The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion.  State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).  To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred.  Id.; State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).  Proof of a probation violation is sufficient if it allows the trial court to make a conscientious and intelligent judgment.  State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984).  In reviewing the trial court's finding, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one.  Mitchell, 810 S.W.2d at 735.  In our view, after exercising a conscientious judgment as to whether or not a Defendant has violated the terms of a probated sentence, the trial court must also exercise a conscientious rather than arbitrary judgment as to an appropriate disposition.  State v. Steven Kelly Fraze, No. M2005-01213-CCA-R3-CD, 2006 WL 618300, at *9 (Tenn. Crim. App., at Nashville, Mar. 13, 2006), *no Tenn. R. App. P. 11 application filed.*

In this case, the Defendant admitted a violation of the terms of probation.  This alone is substantial evidence of record to support the trial court's revocation order.  See State v. Eric D. Devaney, No. E2005-01986-CCA-R3-CD, 2006 WL 2373469, at *4 (Tenn. Crim. App., at Knoxville, Aug. 17, 2006), *no Tenn. R. App. P. 11 application filed*; State v. Michael Emler, No.

4

01C01-9512-CC-00424, 1996 WL 691018, at \*2 (Tenn. Crim. App., at Nashville, Nov. 27, 1996) (holding where the defendant admits a violation of the terms of probation, revocation by the trial court is neither arbitrary nor capricious), *no Tenn. R. App. P. 11 application filed.* We understand the Defendant's contention that he should not be made to serve his entire original sentence because he only technically violated his probation. In our view, after exercising a conscientious judgment as to whether or not a Defendant has violated the terms of a probated sentence, the trial court must also exercise a conscientious rather than arbitrary judgment as to an appropriate disposition.

We conclude that the trial court did not abuse its discretion in this case. The record proves that the Defendant had previously violated his probation by carrying a handgun and missing his curfew hours. Further, on this occasion, the Defendant was at his ex-girlfriend's house after his curfew, which was a violation. The Defendant was charged with possession of marijuana, and he failed to report this charge to his probation officer. Finally, on the day of his hearing to revoke his probation, the Defendant tested positive for marijuana and admitted smoking the same with other inmates in the jail. We conclude that, based upon the evidence presented, the trial court exercised a conscientious judgment rather than an arbitrary one when it ordered the Defendant to serve his sentence in prison. Therefore, the Defendant is not entitled to relief on this issue.

### III. Conclusion

We agree with the judgment of the trial court. Accordingly, we affirm the revocation of the Defendant's probation and the imposition of his sentence.

_____
ROBERT W. WEDEMEYER, JUDGE